**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |
|---|---|
| **GARY PRELL, et al.,** | : |
| **Plaintiffs,** | : |
| **v.** | :     **CIVIL NO. 07-CV-2189** |
| | : |
| **COLUMBIA SUSSEX CORP.** | : |
| d/b/a RADISSON LAKE BUENA VISTA, | : |
| **Defendant.** | : |

---

## MEMORANDUM OPINION & ORDER

**Rufe, J.**                                                                    **October 22, 2007**

In this personal injury action, Plaintiffs claim Gary Prell's person and belongings became infested with bedbugs while he stayed at a Florida hotel owned and managed by Defendant Columbia Sussex Corporation, and that the infestation spread to his wife, their son, and to the family residence in Pennsylvania upon Gary's return home.  Presently before the Court is Defendant's Motion to Transfer Venue to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).  For the reasons that follow, Defendant's Motion is denied.

## I. FACTUAL BACKGROUND

The plaintiffs are husband and wife, Gary and Lisa Prell, and their minor son, Matthew Prell (hereinafter "Plaintiffs," "the Prells," or, for the sake of clarity, referred to by given name).  The Prells live in Newtown, Bucks County, Pennsylvania.[1]  They allege that on or around April 4, 2005, Gary Prell and his luggage became infested with bedbugs during a stay at the Radisson

---

[1] Compl. ¶ 1.  Newtown, Pennsylvania lies within the Eastern District of Pennsylvania.

Lake Buena Vista Hotel, located in Lake Buena Vista, Florida.[2]  They further allege that, when Gary returned home to Pennsylvania on or around April 8, 2005, the infestation spread to Lisa and Matthew (neither of whom had accompanied Gary to Florida), and to the Prell residence generally.[3] Defendant Columbia Sussex Corporation owned and managed the Radisson Lake Buena Vista Hotel at the time that the initial infestation is alleged to have occurred.[4]  Plaintiffs claim that the bedbug infestation necessitated various medical treatments and caused personal property damage.[5]

Plaintiffs originally brought this negligence action in the Court of Common Pleas of Philadelphia, Pennsylvania in April 2007.  Defendant removed pursuant to 28 U.S.C. § 1441,[6] asserting diversity of citizenship of the parties as the jurisdictional basis.[7]  Plaintiffs did not contest the removal.[8]  On August 14, 2007, after initial discovery, Defendant filed the instant Motion to Transfer Venue to the United States District Court for the Middle District of Florida Pursuant to 28 U.S.C. § 1404(a).[9]  Plaintiffs filed a response in opposition on September 7, 2007.[10]

---

[2]Compl. ¶¶ 3, 4.  Lake Buena Vista, Florida lies within the Middle District of Florida.

[3]Compl. ¶¶ 15, 20.

[4]Answer ¶ 3.  Defendant sold the hotel in 2005.  Mot. to Transfer Venue [Doc. No. 18] ¶ 4.

[5]Compl. ¶¶ 12, 20, 28.

[6]Def.'s Notice of Removal [Doc. No. 1] ¶ 9.  Counsel for Defendant appeared specially in order to preserve Defendant's right to object to service, jurisdiction or venue.  Id. at n.1.

[7]Id. at ¶ 9.  Defendant is a Delaware corporation headquartered in Kentucky.  Id. at ¶ 11.

[8]Pls.' Resp. to Mot. to Transfer Venue [Doc. No. 16] ¶ 7.

[9]Docs. No. 11 & 18.

[10]Docs. No. 16 & 17.

## II.  THE LEGAL STANDARD

The transfer of venue statute provides, "[f]or the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[11]  The district court thus must make two positive determinations before ordering a transfer of venue: first, that the transferee venue is appropriate; and second, that the transfer would promote the convenience of the litigation and the interests of justice.[12]

Regarding the first requirement, unless otherwise provided by federal law, the general venue statute, 28 U.S.C. § 1391, governs whether venue is appropriate.[13]  Because this case involves a state law cause of action removed to federal court on diversity grounds, no superseding federal law affects the venue analysis, and § 1391 will control which venue(s) may be proper here.

With respect to the second requirement for transfer, the Third Circuit has established a balancing test to determine whether the convenience and justice considerations enumerated in § 1404(a) recommend transfer.[14]  A court applying the test should assess the present and proposed venues in light of certain public and private interests, and should order transfer when a preponderance of interests favors it.[15]  The public interests to be considered include: the enforceability of the judgment;  practical factors making the trial expeditious or inexpensive;

---

[11]28 U.S.C. § 1404(a).

[12] Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001).

[13]28 U.S.C. § 1391.  Subsection (a) is the general venue provision governing diversity cases, such as the instant action.  28 U.S.C. § 1391(a).

[14]Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).

[15]Id. at 879.

whether the controversy is of particular local interest; any relevant public policies of the potential fora; and in diversity cases, the familiarity of the trial judge with the applicable state law. The private interests include plaintiff's forum preference, and defendant's; whether the claim arose elsewhere; the convenience of the parties in light of their relative financial and physical circumstances; and convenience of witnesses, in terms of ability to reach the fora in question.[16] At all times during the transfer analysis, "the burden of establishing the need for transfer . . . rests with the movant . . . [a]nd, the plaintiff's choice of venue should not be lightly disturbed."[17]

## III. DISCUSSION

### A. Whether Venue is Proper in the Middle District of Florida

The threshold question in the transfer analysis is whether the transferee venue identified by the defendant is appropriate.[18] Subsection (a) of the general venue statute governs whether a particular venue is available in this diversity case, providing, in relevant part,

> [a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.[19]

Here, Defendant asserts that the Middle District of Florida is a proper venue under subpart (2), which allows for venue in a district where a significant portion of the events or omissions giving rise to the

---

[16]Id. at 879-80.

[17]Id. at 879 (citations omitted).

[18]Weber, 155 F. Supp. 2d at 284.

[19]28 U.S.C. § 1391(a).

action occurred.[20]

The "substantial part" element of § 1391(a)(2) does not require that the majority of operative facts underlying an action occurred in the district in question,[21] although events with only a tangential connection to the case will not suffice to support venue.[22]  As a clear result, multiple fora may be available under § 1391(a)(2) in a case in which significant events or omissions occurred in different places.[23]

Venue in this matter could lie in the Middle District of Florida because a "substantial part" of the events giving rise to Plaintiffs' claims occurred there.  Plaintiffs allege that during Gary Prell's stay at the hotel in Lake Buena Vista, Florida, he and his belongings were infested with bedbugs, and he suffered bites from the insects.[24]  They further claim that the infestation traveled on Gary and his luggage from the hotel in the Middle District of Florida to the Prell home in Pennsylvania, where it harmed Lisa, Matthew, and the family's property.[25]  Although Gary's stay at the hotel cannot be said to be the exclusive operative event underlying the claims of these three plaintiffs, two of whom never traveled to Florida, it was certainly "a substantial part of the events giving rise to [this] claim," thus satisfying § 1391(a)(2).  Accordingly, the Middle District of Florida could be a proper venue for this case.

---

[20]Mot. to Transfer Venue ¶¶ 1, 3, 9.

[21]Park Inn Int'l., L.L.C. v. Mody Enters., Inc., 105 F. Supp. 2d 370, 376 (D.N.J. 2000).

[22]Cottman Transmission Systs., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

[23]Park Inn Int'l., 105 F. Supp. 2d at 376; see also Martino, 36 F.3d at 294 (noting that § 1391(a)(2) contemplates that claims can substantially arise in more than one location).

[24]Compl. ¶ 7.

[25]Compl. ¶¶ 15, 20, 23.

**B.  Balancing the <u>Jumara</u> Factors**

Having determined that venue could be appropriate in the Middle District of Florida, the Court must now employ the analysis established by the Third Circuit in <u>Jumara v. State Farm Insurance</u> to "determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer" to that district.[26]

Under <u>Jumara</u>, the Court must assess the transfer motion in light of certain private and public interests.  As an initial matter, the Court finds that many of the public interests enumerated in <u>Jumara</u> are neutral here: a judgment emanating from either district would be readily enforceable against the corporate defendant; there appear no external, practical obstacles to efficient litigation in either venue; and neither forum appears to have a particular local interest in the controversy or public policies especially relevant to it.

An additional public interest the Court must consider in this diversity case is the familiarity of the trial judge with the applicable state law.  The analysis requires a threshold determination of which state's law applies to the case.  While party positions are not determinative in the analysis, the Court notes that Plaintiffs and Defendant apparently disagree as to whether Florida or Pennsylvania law should govern.  Defendant asserts that Florida negligence law applies, and that this <u>Jumara</u> factor therefore weighs in favor of transfer to the Middle District of Florida.[27] Plaintiffs do not explicitly address the choice-of-law question.  However, they brought the complaint under Pennsylvania law, and dispute substantially all of the points on which Defendant bases its

---

[26]<u>Jumara</u>, 55 F.3d at 879.

[27]Mot. to Transfer Venue ¶ 11.

contention that the law of Florida, and not Pennsylvania, applies.[28]

When analyzing which state's substantive law applies in a diversity case, a district court employs the choice-of-law rules of the state in which it sits.[29]  Accordingly, the Court will apply Pennsylvania's choice-of-law rules to the present analysis.

As the Third Circuit recently clarified,[30] Pennsylvania's choice-of-law approach entails three steps.  In the first, "the court must determine whether a real conflict exists, that is, whether these states would actually treat this issue any differently."[31]  If the court finds that there is no relevant difference between the laws of the states in question, there is  no real conflict, and the court must apply forum law.[32]

If, on the other hand, the court finds that a real conflict does exist, it should proceed to the second step, and examine the governmental policies underlying each law so as to classify the conflict as true, false, or an unprovided-for situation.[33]  A true conflict exists where each jurisdiction has a governmental policy, or "interest," that would be impaired by the application of the other's law.[34]  There is a false conflict if only one jurisdiction's interests would be impaired by the

_____

[28]Pls.' Resp. Memo. to Mot. to Transfer Venue, unnumbered pp. 2-3.

[29]Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).

[30]Hammersmith v. TIG Ins. Co., 480 F.3d 220, 228-31 (3d Cir. 2007).

[31]Kukoly v. World Factory, Inc., 2007 WL 1816476, at *2 (E.D. Pa. June 22, 2007), citing Hammersmith, 480 F.3d at 230.

[32]Air Prods. and Chems. v. Eaton Metal Prods. Co., 272 F. Supp. 2d 482, 490 n.9 (E.D. Pa. 2003).

[33]Hammersmith, 480 F.3d at 230.

[34]LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).

application of the other jurisdiction's law.[35]  The situation is unprovided-for if neither jurisdiction's interests would be impaired by the application of the other's law.[36]  Only if it finds a true conflict at this stage should the court proceed to the third step of the Pennsylvania choice of law analysis.[37]

In the third step, faced with a true conflict, the court must "determine which state has the greater interest in the application of its law."[38]  This determination involves a qualitative assessment of the contacts each jurisdiction has with the dispute.[39]  Contacts are significant to the extent they implicate the policies and interests underlying the particular issue before the court.[40]  Thus, the Pennsylvania choice-of-law approach is a flexible, "hybrid methodology" combining policy oriented "interest analysis" with the contacts-based analysis of the Restatement (Second) of Conflict of Laws.[41]

The Restatement (Second) "defines special rules for certain torts that have well-defined conflicts analysis methods."[42]  Relevant to this case, it identifies contacts a court may emphasize when assessing a jurisdiction's relationship to claims of personal injury and injury to property.[43]  Specifically, it states that where the conduct causing an injury and the injury itself occur

---

[35]Id.  In a false conflict situation, the court applies the law of the interested state.  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir. 1991).

[36]Hammersmith, 480 F.3d at 230 n.9.

[37]Id. at 230.

[38]Id. at 231 (citation omitted).

[39]Shields v. Consol.Rail Corp., 810 F.2d 397, 400 (3d Cir. 1987).

[40]Id.; Hammersmith, 480 F.3d at 231.

[41]Hammersmith, 480 F.3d at 226-27; Air Prods., 272 F. Supp. 2d at 498.

[42]Air Prods., 272 F. Supp. 2d at 502.

[43]Restatement (Second) of Conflict of Laws §§ 146, 147 (1971).

-8-

in different states, the law of the place of injury will usually control.[44]  This rule has particular force where the place of injury is also the domicile of the injured party.[45]  Similar rules apply in cases of injury to property.[46]

Applying Pennsylvania's choice-of-law analysis to this case, the Court must first determine whether an actual conflict of laws is present.  Plaintiffs' claims sound in ordinary negligence, and do not include claims for punitive damages.  Defendant has not identified or suggested any relevant differences or areas of conflict between the law of ordinary negligence of Pennsylvania, and its counterpart in Florida law, simple negligence.  The Court, in its investigation into Florida and Pennsylvania negligence law, has not found a salient difference.[47]  Thus, nothing presented to or discovered by this Court supports a finding of actual conflict here.[48]  As a result, it appears that forum law -- the law of Pennsylvania -- applies in this diversity action.  Therefore, the

---

[44]Restatement (Second) of Conflict of Laws § 146 cmt. e.

[45]Id.

[46]Restatement (Second) of Conflict of Laws § 147 cmt. e.

[47]For example, the applicable laws of Florida and Pennsylvania hold hotel owners to the same standard of care toward business invitees.  A Florida hotel owner owes two basic duties to its hotel guests: "(1) the duty to exercise reasonable care in maintaining its premises in a reasonably safe condition; and (2) the duty to warn of concealed perils that are or should be known to the [owner] and that are unknown to the invitee and cannot be discovered through the exercise of due care."  Livingston v. H.I. Family Suites, Inc., 2006 WL 1406587, at *6 (M.D. Fla. May 22, 2006) (citing St. Joseph Hospital v. Cowart, 891 So. 2d 1039, 1040 (Fla. 2d DCA 2004); Knight v. Waltman, 774 So. 2d 731, 733 (Fla. 2d DCA 2000)).  In Pennsylvania, the duties owed by a hotel owner to business invitees are the same.  See Winkler v. Seven Springs Farm, 359 A.2d 440, 442 (Pa. Super. Ct. 1976).

[48]We note that, even if a true conflict were present in this action between the applicable laws of Florida and Pennsylvania, it is far from clear that the law of Florida would control, as Defendant suggests.  Indeed, under the Pennsylvania choice-of-law methodology, which relies in large part on the contacts analysis set forth in the Restatement (Second) of Conflict of Laws to resolve true conflict situations, Pennsylvania law would likely apply.  That is because Pennsylvania was the place of injury for two of the three plaintiffs and much of the property named in the complaint, as well as the Plaintiffs' domicile and the usual location of the damaged property.  These considerations, under §§ 146 and 147 of the Restatement (Second), would weigh heavily for Pennsylvania in the assessment of which state had the greatest interest in the instant case.  However, in the absence of a true conflict, the Court need not and cannot reach such a conclusion here.

Jumara factor regarding the trial court's familiarity with the applicable state law weighs against transfer.

Turning to the private Jumara interests, the Court first considers Plaintiffs' forum preference, which is entitled to "considerable weight,"[49] and "should not be disturbed lightly."[50] Less weight is accorded the plaintiff's choice when the selected venue is away from her state of residence,[51] when a contractual choice of forum clause manifests conflicting intentions as to forum,[52] or where all of the operative events giving rise to a claim occurred elsewhere.[53]   But such considerations do not apply to this case.  Rather, Plaintiffs reside in this district and originally filed suit in a Pennsylvania court within this district; no choice of forum clause appears to apply; and many of the operative facts in Plaintiffs' claims, including all injuries to Lisa and Matthew Prell, and all damage to the Prell home, occurred in this district.  Hence, Plaintiffs' forum preference in this matter must receive considerable deference.

Another private factor to be considered is Defendant's venue preference.  Defendant, a Delaware corporation headquartered in Kentucky, prefers the Middle District of Florida as a venue for this action.  It forwards convenience-based arguments in support of its preference, including that locating potential witnesses from among the hotel's staff at the time of the alleged infestation will be more easily accomplished from that venue.  It also argues that, because it no longer owns the

---

[49]In re Amkor Techn., Inc. Secs. Litig., 2006 WL 3857488, at *2 (E.D. Pa. December 28, 2006).

[50]Weber, 155 F. Supp. 2d at 285.

[51]See First Union Nat'l Bank v. United States, 55 F. Supp. 2d 331, 332-33 (E.D. Pa. 1999).

[52]See Jumara, 55 F.3d at 880-81.

[53]See LG Elecs. Inc. v. First Int'l. Computer, 138 F. Supp. 2d 574, 590 (D.N.J. 2001).

-10-

hotel, it will not be able to require any of its former employees to serve as witnesses, but instead may need to resort to subpoenas to compel such persons to attend depositions or trial. Defendant argues that the Middle District of Florida is a preferable venue for these purposes because it believes that several of its former employees live in central Florida, although it has been able to locate only one such employee to date. Defendant's arguments thus appear to rely largely on speculation. The one former employee who Defendant has located may require a subpoena to act as a witness.[54] Other former employees, believed to reside in the judicial district in question, may also require subpoenas to serve as witnesses. Defendant's venue preference cannot be accorded more than normal weight on the basis of such hypothetical scenarios. Although Defendant's preference cannot overcome the considerable weight accorded Plaintiffs' choice in this case, it could do so in combination with other factors favoring transfer to the Middle District of Florida.[55]

A third private factor is where the claim arose. Courts may give less deference to a plaintiff's venue preference where the operative events underlying the claim occurred in another district.[56] For example, in Jolly v. Faucett, the district court found that the plaintiff's venue preference was entitled to less deference where the automobile accident which gave rise to the negligence action occurred in a different district.[57] Unlike injuries from a one-time vehicular accident, the injuries in this case occurred over several days, as three plaintiffs were harmed

---

[54]Defendant has not averred that it believes a subpoena will be required to secure the participation of this former employee as a witness.

[55]See In re Amkor, 2006 WL 3857488, at *3 - 4.

[56]See, e.g., LG Elecs., Inc., v. First Int'l. Computer, 138 F. Supp. 2d 574, 590 (D.N.J. 2001); Jolly v. Faucett, 2007 WL 137833, at *2 - *3 (E.D. Pa. January 16, 2007).

[57]Jolly, 2007 WL 137833, at *3.

separately in two states.  Gary Prell's injuries arose predominantly at the hotel in the Middle District of Florida, where he claims to have suffered actual physical and property damage.  However, all alleged physical injuries to Lisa and Matthew Prell, and apparently the bulk of the property damage suffered by all three Plaintiffs, occurred in Pennsylvania, in this judicial district.  Thus, Plaintiffs allege that Defendant's breach of the duty of care occurred in Florida, but that the resultant injuries occurred mainly in Pennsylvania.  Therefore, the Court finds that the operative events in this matter did not occur predominantly in Florida; rather, at a minimum, the underlying events occurred in equal parts in Pennsylvania and Florida.  Because this claim did not predominantly arise elsewhere no less deference will be accorded to Plaintiffs' venue preference on this basis.

The final personal interests of the parties that must be considered are the convenience of the parties in light of their relative financial and physical circumstances, and the convenience of potential witnesses, in terms of ability to reach the fora in question.  Regarding the parties' convenience, the Court finds that, because Plaintiffs reside in this judicial district, it would be significantly more convenient, and less costly,  for them to carry on litigation here.  Further, it appears that the physical and financial convenience of the defendant Delaware corporation, headquartered in Kentucky, would not be materially different if it were required to litigate this case in Pennsylvania as opposed to Florida.   Hence, this factor favors Plaintiffs.  With respect to the convenience of witnesses, Plaintiffs contend that liability and damages witnesses, including local medical doctors, would be required to travel extensively if this case were transferred to the Middle District of Florida.  Defendant asserts that it could more readily locate and, if necessary, subpoena former employee witnesses if the matter were transferred, but that bringing such potential witnesses to Pennsylvania would be cumbersome and costly.  Weighing the measurable inconvenience of

Plaintiffs' actual witnesses against the hypothetical inconvenience of Defendant's possible witnesses, the Court finds that this factor favors Plaintiffs.

In sum, applying the balancing test set forth in <u>Jumara</u> to the facts of this case, the relevant interests do not favor transfer.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is denied.  The matter shall remain before this Court.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                              :

**GARY PRELL, et al.,**             :
            **Plaintiffs,**      :
    **v.**                 :     **CIVIL NO. 07-CV-2189**
                              :

**COLUMBIA SUSSEX CORP.**    :
d/b/a RADISSON LAKE BUENA VISTA, :
            **Defendant.**    :
_____:

**<u>ORDER</u>**

        **AND NOW**, this 22nd day of October 2007, upon consideration of Defendant's Motion to Transfer Venue to the United States District Court for the Middle District of Florida and supporting Memorandum [Docs. No. 11 & 18], and Plaintiffs' Response and Memorandum of Law in Opposition [Docs.  No. 16 & 17], and for the reasons stated in the attached Memorandum Opinion, it is hereby **ORDERED** that the Motion is **DENIED**.

        It is so **ORDERED**.

                                       **BY THE COURT:**

                                     **/s/ Cynthia M. Rufe**
                                     _____
                                     **CYNTHIA M. RUFE, J.**