**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| **GARY PRELL, et al.,** | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **CIVIL NO. 07-CV-2189** |
| | : | |
| **COLUMBIA SUSSEX CORP.** | : | |
| d/b/a RADISSON LAKE BUENA VISTA, | : | |
| **Defendant.** | : | |
| | : | |

---

## MEMORANDUM OPINION & ORDER

**RUFE, J.**                                                                 **October 20, 2008**

   In this personal injury action, Plaintiffs claim medical and property damage due to insects first encountered during a stay at a hotel operated by Defendant.  Presently before the Court is Defendant's Motion for Summary Judgment.[1]  For the reasons that follow, the Motion will be denied.

## I.  LEGAL STANDARD

   A court should deny a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2]  An issue of material fact is genuine if, considering the applicable law, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

---

[1] Doc. No. 35.

[2] Fed. R. Civ. P. 56(c) (2007); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In the summary judgment analysis, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[4]   A court must treat the nonmovant's allegations as true if they conflict with those of the movant and are supported by proper proofs.[5]   A court should not, however, make credibility determinations or weigh the evidence presented.[6]   An inference based purely upon speculation or conjecture cannot create a genuine issue of material fact.[7]

## II.  BACKGROUND

At the outset of this recitation, the Court notes that few if any factual disputes appear in the record presented.  As will be explained in further detail below, Defendant's Motion limits itself to the claim that Plaintiffs' evidence is deficient as a matter of law.  Accordingly, beyond the denials of factual allegations in its Answer, the only evidence Defendant has supplied for present purposes is Plaintiffs' discovery – Plaintiffs' answers to interrogatories and a transcript of a deposition of Plaintiff Gary Prell.  Defendant has not set forth additional evidence that contradicts or casts doubt on Plaintiffs' sworn statements in these record materials.  Thus, in accordance with the governing legal standard, the following background will consist of undisputed facts viewed in the light most favorable to Plaintiffs, and Plaintiffs' statements of disputed facts where such are supported by proper proofs.[8]

---

[4] Anderson, 477 U.S. at 255.

[5] Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).

[6] Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 665 (3d Cir. 2002) (quoting Reeves v. Sanderson Plumbing Prods., 560 U.S. 133, 150 (2000)).

[7] Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

[8] See Anderson, 477 U.S. at 255-56.

Plaintiffs are Gary Prell ("Mr. Prell"), his wife, Lisa Prell ("Mrs. Prell"), and their minor son, Matthew Prell (collectively, "Plaintiffs").  Plaintiffs live in Newtown, Bucks County, Pennsylvania.[9]  Defendant is Columbia Sussex Corporation ("Columbia Sussex").  Columbia Sussex operated the Radisson Lake Buena Vista Hotel in Lake Buena Vista, Florida, in April, 2005 ("the Hotel").[10]

While on a business trip, Mr. Prell arrived at the Hotel on April 4, 2005, stayed four nights, and departed the morning of April 8, 2005.[11]  On the evening of April 4, 2005, Mr. Prell did not notice any insects in his hotel room,[12] and had no trouble sleeping.[13]

On the morning of April 5, 2005, Mr. Prell noticed at least one "little reddish brown" insect in his room, on a bed.[14]  He had not seen an insect like it before.[15]  He believed the insect was alive because it was moving.[16]  Before leaving the Hotel for the day, Mr. Prell complained to a clerk at the front desk about the insect in his room.[17]  He described a small insect, "reddish-brown," that "kind of looked like a tick."[18]  The clerk responded by telling Mr.

---

[9] Mot. Summ. J. Ex. C (Deposition of Gary Prell ("Prell Dep.")) at 6:8.

[10] The Hotel has not been operated by Columbia Sussex since September 4, 2005.  Mot. Summ. J. n.1.

[11] See Prell Dep. at 14:19-22, 16:9-12, 36:12-14.

[12] Prell Dep. at 24:1-4.

[13] Prell Dep. at 26:8.

[14] Prell Dep. at 25:5.

[15] Prell Dep. at 26.

[16] Id.

[17] Prell Dep. at 26:13-19.

[18] Id.

Prell his room would be checked for insects when cleaned, and assuring him that "there were exterminations done" periodically in the Hotel's rooms.[19]  Mr. Prell did not return to the Hotel until approximately 11 o'clock that night, and went to sleep without incident.

On the morning of April 6, 2005, Mr. Prell observed at least one insect identical to the one he had seen the day before, on the sheets of his bed.[20]  He again told a clerk at the Hotel's front desk about the insects in his room before leaving for the day.[21]  The clerk told Mr. Prell the Hotel would "look into it" and "take care of it."[22]  Nearly contemporaneously, Mr. Prell told two business colleagues, Fred Romano and Dominic Pagnozzi, about the insects he had seen in his room.[23]  Mr. Prell returned to the hotel late on April 6, 2005, and did not notice any insects before going to sleep.

Mr. Prell saw identical insects in his room on the morning of April 7, 2005,[24]  the third day of his stay at the Hotel.  In addition to seeing actual insects, Mr. Prell observed "a little pin point red stain, a bloodstain" on his white undershirt.[25]  At that time, he did not draw a connection between the bloodstain on his shirt and the insects in his room.[26]  Mr. Prell again

---

[19] Prell Dep. at 29-30.

[20] Prell Dep. at 31:12-13.

[21] Prell Dep. at 31:20-22.

[22] Prell Dep. at 31:23, 32:9.

[23] Prell Dep. at 32:24-33:1.

[24] Prell Dep. at 33:24, 34:15.

[25] Prell Dep. at 34:1-2, 7.

[26] Prell Dep. at 34:7-9.

complained to a Hotel desk clerk about the insects in his room before leaving for the day.[27]

On April 8, 2005, the fourth and final morning of his stay, Mr. Prell saw multiple insects identical to those he had seen each previous day at the Hotel, in his room.[28]  Among other places, he observed the insects on his shirt as he stood at the mirror.[29]  While checking out of the Hotel, he told the desk clerk that he had seen "these bugs" in his room every day of his stay.[30] The clerk assured him the Hotel rooms were clean and were subject to periodic extermination treatments.[31]  The clerk also gave Mr. Prell a twenty dollar reduction to his bill due to the insects in his room,[32] and wrote the words "bugs in bed" on Mr. Prell's Hotel receipt.[33]  Mr. Prell left the Hotel on the morning of April 8, 2005, and returned home.[34]

Within a few weeks of Mr. Prell's return to Pennsylvania,[35] each Plaintiff began to experience skin irritations of varying degrees of severity which would persist throughout the summer.  Welts appeared on Matthew Prell,[36] who was then five years old.[37]  At first, only a few

---

[27] Prell Dep. at 34:15-17.

[28] Prell Dep. at 34:24-35:2.

[29] Prell Dep. at 35:1-3.

[30] Prell Dep. at 35:4-6.

[31] Prell Dep. at 35:7-8.

[32] Prell Dep. at 35:9-13.

[33] Prell Dep. at 71:17-18, 84:8-9.

[34] Prell Dep. at 36:12-14.

[35] Prell Dep. at 39:11.

[36] Prell Dep. at 39:13.

[37] Prell Dep. at 65:12-13.

welts appeared, but as weeks passed the number increased.[38]  "Little bites" developed on Mrs.

Prell's legs.[39]  Pinpoint bloodstains repeatedly appeared on Mr. Prell's shirts, similar to those he

had seen while at the Hotel.[40]

    During the summer of 2005, Matthew Prell's welts progressively worsened, and

hives also appeared all over his body.[41]  With the onset of the hives in July, 2005, his parents

took him to his pediatricians, Doctors Margiotti and Kroll, who prescribed anti-allergy

medication.[42]  Matthew Prell took the medications Benadryl and Zyrtec for several weeks, but

neither drug eliminated his welts or hives.[43]  As a result, and after seeing Matthew Prell twice for

his symptoms,[44] the pediatricians referred him to a pediatric allergist, Dr. Smith, in early August,

2005.[45]

    Shortly thereafter, and while at home, Mr. Prell saw a red insect on his shirt.[46]  It

was identical to the insects he had seen in the Hotel in Florida.[47]  Mr. Prell claims he had never

---

[38] Prell Dep. at 40:16-18.

[39] Prell Dep. at 39:13-15.

[40] Prell Dep. at 39:16-17, 40:12-41:1.

[41] Prell Dep. at 39:21-40:1.

[42] Prell Dep. at 40:1-5.

[43] Prell Dep. at 68:16-19.

[44] Prell Dep. at 64:24.

[45] Prell Dep. at 41:12-13, 62:13-14, 65:1-2.

[46] Prell Dep. at 41:17-18.

[47] Prell Dep. at 41:18-19.

seen an insect it like prior to his stay at the Hotel in Florida.[48]

After seeing the insect on his shirt, Mr. Prell went directly to his home computer and accessed an internet search engine in an effort to find out what the insect was.[49]  He entered the term "bed bugs" into the search engine, and numerous websites with articles and images resulted.[50]  Mr. Prell observed that the insects pictured on the websites were identical to the insects he had seen in Florida, and now in his home.[51]  Some of the websites also featured pictures of people suffering allergic reactions to bites from so-called "bed bugs,"[52] in particular, in the form of welts.[53]  Mr. Prell observed that the welts shown appeared identical to the welts on his son, Matthew Prell.[54]  Mr. Prell also read information about where bedbugs tend to live in a home, and immediately proceeded to search his home for such infestations.[55]  He found them.

Mr. Prell looked under the folds and stitching of the mattress on his bed and saw colonies of hundreds of small, reddish-brown insects.[56]  Mr. Prell believed the insects were the same as those he had seen on his shirt and those he had seen in Florida.[57]

---

[48] Prell Dep. at 41:19-20.

[49] Prell Dep. at 41:23-42:2.

[50] Prell Dep. at 42:4-7.

[51] Prell Dep. at 49:5-10.

[52] The insect species *Cimex lectularis* is commonly known as the "bed bug," and that is how the Court refers to *Cimex lectularis* hereinafter.

[53] Prell Dep. at 47:9-11.

[54] Prell Dep. at 49:14.

[55] Prell Dep. at 42:6-13.

[56] Prell Dep. at 42:19-22.

[57] Prell Dep. at 43:1-10.

Continuing the search, Mr. Prell found bedbugs in the mattress and box spring used by himself and Mrs. Prell, and in the beds of his son and his daughter, who is not a party in this action. He also found bedbugs in numerous pieces of wooden furniture, in bedspreads and pillows, and in certain areas of carpeting.[58] He pulled back the quarter-round floor molding in his bedroom, but found no bedbugs there.[59] That same day, Mr. Prell removed the infested mattresses, box springs, furniture, pillows and linens from his home, and placed them in the garbage.[60] He also called professional insect exterminators to come to the house, and on the exterminators' advice, retained a carpet steam cleaning service.[61] The steam cleaners came to the Prell home on August 12, 2005, and an exterminator came twice, once on August 13, 2005, and a second time within the week.[62] The exterminator confirmed that the insects infesting Plaintiffs' home were bedbugs.[63]

On August 18, 2005, at Matthew Prell's next appointment with pediatric allergist Dr. Smith, Mr. Prell told the doctor about the bedbug infestation discovered in the Prell home.[64] Dr. Smith's medical records from the visit by Matthew Prell include a note referencing bedbugs.[65] After the extermination treatments in the Prell home, Matthew Prell's welts and hives

---

[58] See generally, Prell Dep. 42-60.

[59] Prell Dep. at 59:22.

[60] Prell Dep. at 56-58.

[61] Prell Dep. at 53:7-14.

[62] Prell Dep. at 55:6, 60:7-19, 61:14-15.

[63] Prell Dep. at 85:19.

[64] Prell Dep. at 62:13-63:8.

[65] Prell Dep. at 62:15-63:17.

disappeared and did not return.[66]  Accordingly, his last visit with the pediatric allergist was the visit of August 18, 2005.[67]

Prior to the infestation at issue, the Prells had never had "a problem with bedbugs."[68]  Mr. Prell kept at least one specimen sample of the insects found in his home.[69]

Plaintiffs filed this action in the Court of Common Pleas of Philadelphia County on April 3, 2007.  Their Complaint includes three counts of premises liability against Defendant, one by each Plaintiff.[70]  The gravamen of all counts is that Defendant, through its negligence, permitted a dangerous condition to persist in the Hotel in the form of a bedbug infestation which caused direct physical and property injury to Mr. Prell during and after his stay, and to Mrs. Prell and Matthew Prell after Mr. Prell's return home.  On May 31, 2007, Defendant removed the action pursuant to 28 U.S.C. § 1441, asserting diversity of citizenship jurisdiction.[71]  On June 13, 2007, Defendant filed an Answer.[72]

On August 14, 2007, Defendant filed a Motion to Transfer Venue,[73] which was denied by Order of October 23, 2007.[74]  After the discovery period was extended and subsequent

---

[66] Prell Dep. at 62:17-63:2.

[67] Prell Dep. at 63:8.

[68] Prell Dep. at 83:18.

[69] Pls.' Resp. to Def. Req. Prod. ¶ 12.

[70] Not. Rem. at pp. 10-19.

[71] Not. Rem. ¶ 9.

[72] Doc. No. 4.

[73] Doc. No. 11.

[74] Doc. No. 19.

settlement efforts failed, the matter was placed in the September, 2008 Trial Pool.  Defendant

filed the instant Motion for Summary Judgment on July 16, 2008.[75]  Plaintiffs filed a Response,

without any evidentiary exhibits or affidavits,[76] and Defendant filed a Reply.[77]  After a

conference with counsel, the trial in this matter was continued indefinitely.[78]  On September 5,

2008, this Court ordered Plaintiffs to file any exhibits referenced in or necessary to the

understanding of their Response by September 9, 2008,[79] but no such exhibits were filed.

        In the instant Motion, Defendant argues for summary judgment on two separate

grounds.  First, it asserts it never had notice of a bedbug problem in Mr. Prell's Hotel room, only

reports of unspecified "bugs."  Defendant contends these generic reports were incapable of

providing the notice of a dangerous condition necessary for liability on the negligence causes of

action asserted by Plaintiffs.  Second, Defendant argues Plaintiffs' failure to obtain an expert

opinion that the bedbugs caused the claimed injuries is fatal to their claims because the causation

question presented in this case is beyond the ken of a lay juror.  Plaintiffs disagree with

Defendant on both points, arguing Mr. Prell's complaints to Hotel clerks provided adequate

notice to Defendant of the bedbug condition in his room, and that, given the record evidence, a

jury is capable of determining that Plaintiffs' injuries were caused by bedbugs without expert

assistance.  After a careful review of Defendant's Motion, the Response in opposition, the Reply

---

[75] Doc. No. 35.

[76] Doc. No. 36.

[77] Doc. No. 38.

[78] See Doc. No. 39.

[79] Doc. No. 42.

and the applicable law, this matter is ready for disposition.

## III.  DISCUSSION

Plaintiffs' claims sound in negligence.  In the aforementioned Order denying Columbia Sussex's Motion to Transfer Venue, the Court ruled that the substantive law of Pennsylvania applies to this action.[80]  A prima facie negligence claim under Pennsylvania law requires a plaintiff to prove that: the defendant owed plaintiff a duty; it breached that duty; the breach caused any claimed injury; and the plaintiff suffered damages.[81]  Defendant argues that Plaintiffs fail as a matter of law to make out two of the negligence elements, those of duty and causation.

The parties agree, as does the Court, that this case involves the particular duty owed by a possessor of land to a business invitee.  Pennsylvania courts apply the definition of a land owner's duty to business invitees set forth in the Restatement (Second) of Torts § 343,[82] which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

---

[80] Order of October 23, 2007, at 6-9.  Defendant's Motion was denied because, on balance, the relevant factors in the transfer analysis, including Plaintiffs' choice of forum, militated against transfer.

[81] Atcovitz v. Gulph Mills Tennis Club, Inc., 571 Pa. 580, 586, 812 A.2d 1218, 1222 (2002).

[82] See Winkler v. Seven Springs Farm, Inc., 359 A.2d 440 (Pa. 1976).

(c) fails to exercise reasonable care to protect them against the danger.[83]

Subsection (a) of § 343 entails a notice requirement that may be satisfied by evidence that the defendant had actual or constructive notice of the condition at issue.  That is, a plaintiff may show either that the property owner knew, or in the exercise of reasonable care should have known, of the existence of the condition.[84]

Actual notice exists where evidence shows that the defendant had direct knowledge of the condition.  In contrast, "a person is charged with having constructive notice when he has knowledge of facts putting him upon inquiry," and where reasonable inquiry would be expected to reveal the dangerous condition.[85]  A possessor of land has a duty to investigate or inquire into a condition, in turn, if information about it is directly communicated to him by a source that the party "would be careless to disregard."[86]  "Once the duty to inquire is raised, the party is deemed to have such knowledge as he would have acquired by the exercise of ordinary intelligence and understanding."[87]  At least one Pennsylvania trial court applying § 343 in a summary judgment posture has held that an innkeeper could be found to have had actual notice of a dangerous condition where evidence showed the condition was reported to the inn's staff prior to an injurious incident.[88]

---

[83] Restatement (Second) of Torts § 343.

[84] Zito v. Merit Outlet Stores, 647 A.2d 573, 575 (Pa. Super. Ct. 1994).

[85] Felton v. Spratley, 640 A.2d 1358, 1362 (Pa. Super. Ct. 1994).

[86] Id. at 1363 (citation omitted).

[87] Id. at 1362-63.

[88] Mather v. Pennsylvania State University, 64 Pa. D. & C. 4th 381, 387, No. 338 2003 WL 23473917 (Pa. Com. Pl. Oct. 16, 2003).

In arguing that it had no notice of the condition in Mr. Prell's Hotel room, Defendant contends the Court should be guided by cases of out-of-state courts applying § 343.[89] These cases can be read to support the proposition that notice will not be imputed to a landowner that a dangerous condition exists on his land in the form of dangerous animals simply because he has general knowledge that such beasts can enter his land.[90] Defendant contends that here, it had mere "general," nonspecific notice of "bugs" in Mr. Prell's room – not enough to alert it to the presence of the dangerous condition at issue, bedbugs.

The Court finds that a genuine issue of material fact exists as to whether Defendant had actual or constructive notice of bedbugs in Mr. Prell's hotel room. The evidence presented viewed in the light most favorable to Plaintiffs would permit a reasonable juror to find that Defendant knew or should have known of the presence and the nature of the insects in the room. Mr. Prell complained of small, tick-like, reddish-brown insects in his room on each morning of his stay at the Hotel. Clerks repeatedly assured him the matter would be "taken care of" by staff, and that exterminations were periodically done. A juror could reasonably find Defendant had actual notice of the condition if he or she inferred that the Hotel's cleaning crew or other staff looked into the complained-of problem as promised and observed the same insects seen daily by Mr. Prell. A reasonable juror could likewise find that Defendant had constructive notice of the bedbugs in the room by finding that after Mr. Prell reported the insects, Defendant

---

[89] Brunelle v. Signore, 263 Cal. Rptr. 415 (Cal. Ct. App. 1989); Overstreet v. Gibson Product Co., 558 S.W. 2d 58 (Tex. App. 1977).

[90] See Brunelle, 263 Cal. Rptr. at 420 (notice of presence of brown recluse spider in home may not be imputed to landowner on basis of his general knowledge of dangerous spiders in area of home); Overstreet, 558 S.W. 2d at 59 (storeowner's knowledge of mice in store does not permit imputation of notice of rattlesnake in store despite fact that rattlesnakes were common to area and generally known to eat mice).

had a duty to make reasonable inquiry by examining Mr. Prell's room (whether or not it actually did so), and that such inquiry would have revealed the condition at issue and obligated Defendant to take steps to identify and remedy it.  Thus, summary judgment will not be granted on the basis of a lack of notice and hence an absence of duty.

In its second and final argument, Defendant contends that without an expert Plaintiffs cannot sustain their burden to prove that: "(1) there was an infestation of bedbugs in [Mr. Prell's] room at the Hotel; (2) the bedbugs traveled with him to his home in Pennsylvania; (3) the insects which infested his home in Pennsylvania were bedbugs; and (4) the bedbugs in his home were from the [H]otel."[91]  In other words, Defendant argues that Plaintiffs' evidence as to causation is legally insufficient in certain key respects.

As this diversity matter is governed by the law of Pennsylvania, the Court considers whether Pennsylvania law requires expert testimony regarding causation in similar negligence actions.[92]  Neither the parties in their briefs nor the Court in its independent inquiry has identified a Pennsylvania case involving materially similar facts and legal issues to those presented here.  It is therefore necessary to consider the principles that govern when expert testimony is required to show causation in Pennsylvania negligence cases.

In Pennsylvania, "the situations in which expert testimony is required to establish a prima facie case of negligence are limited."[93]  As a general matter, expert testimony is needed where understanding the subject matter calls for special skill and training beyond the ken or

---

[91] Mot. Summ. J. at 10.

[92] See Tormenia v. First Investors Realty Co., Inc., 251 F.3d 128, 133 (3d Cir. 2000).

[93] Cipriani v. Sun Pipe Line Co., 574 A.2d 706, 714 (Pa. Super. Ct. 2000).

knowledge of a layperson.[94]  However, "if all the primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is no need for the testimony of an expert."[95]

One of the exceptional classes of case in which expert testimony is ordinarily required in Pennsylvania is personal injury.[96]  In particular, in such a case, medical testimony must usually be provided "to causally connect the plaintiff's injuries with the accident," although "where there is a sufficiently close relationship between the accident and the injury, the causal relationship may be established without the aid of expert testimony."[97]

Finally, as it is relevant to present considerations, we return to first principles to note that a jury may find facts based on direct or circumstantial evidence.  Pennsylvania courts have relied on the work of professors Prosser and Keaton in explaining the concept of circumstantial evidence, stating:

> Circumstantial evidence is . . . "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred" . . .  The inference, or process of reasoning by which a conclusion is reached, "must be based upon the evidence given, together with a sufficient background of human experience to justify the conclusion."[98]

---

[94] Young v. Dept. of Transp., 560 Pa. 373, 376-77, 744 A.2d 1276, 1278 (2000).

[95] Reardon v. Meehan, 424 Pa. 460, 465, 227 A.2d 667, 670 (1967).

[96] Cipriani, 574 A.2d at 715.  Professional malpractice is another such area.  Id.

[97] Id.

[98] D'Ardenne by D'Ardenne v. Strawbridge & Clothier, Inc., 712 A.2d 318, 320 (Pa. Super. Ct. 1998) (quoting W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 39, at 242-43 (5th ed. 1984) ("PROSSER AND KEETON")).

Encompassed within the concept of circumstantial evidence is the doctrine of *res ipsa loquitur*,[99] which may apply where direct evidence is lacking, but circumstantial evidence shows "that the negligence of the defendant is the most plausible explanation for the injury."[100]

   In the instant matter, Plaintiffs bring claims of physical injury and injury to personal property.  While claims of personal physical injury typically require expert testimony on causation under Pennsylvania negligence law, claims of injury to property do not operate under a similar rule.  As no general rule applies, the Court considers whether the subject matter at issue involves special skill or training beyond the ken of a layperson,[101] or whether instead "all the primary facts can be accurately described to a jury and . . . the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation,"[102] such that no expert is needed.

   Considering the record presented, the Court cannot find as a matter of law that expert testimony is required to support Plaintiffs' property damage claims.  Rather, genuine

---

[99] D'Ardenne, 712 A.2d at 320.

[100] Id. at 321 (quoting PROSSER AND KEETON § 40, at 257).  Pennsylvania has adopted the definition of *res ipsa loquitur* set forth in Section 328D of the Restatement (Second) of Torts.  Gilbert v. Korvette, Inc., 457 Pa. 602, 327 A.2d 94 (1974).  That Section provides: "(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.  (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.  (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."  Restatement (Second) of Torts § 328D (1965).  The applicability of the doctrine in this case has not been argued by the parties, and the Court makes no ruling on the point at this time.

[101] Young, 560 Pa. at 376-77, 744 A.2d at 1278.

[102] Reardon, 424 Pa. at 465, 227 A.2d at 670.

-16-

issues of material fact appear as to the causation of the insect infestation in Plaintiffs' home that preclude summary judgment as to these claims.  Plaintiffs have adduced lay testimony from Mr. Prell as follows: he repeatedly observed small, reddish-brown, tick-like insects in the Hotel of Defendant in Florida; he repeatedly saw identical insects in Pennsylvania within a few weeks of returning from Florida; he had never seen such insects before seeing them in the Hotel; he had never before seen such insects in his home; he researched the insects and came to believe they were bedbugs; an exterminator came twice to his home and confirmed the insects were bedbugs; Mr. Prell preserved at least one sample of an offending insect.[103]  Defendant has not challenged any of this evidence with contradictory evidence of its own, expert or otherwise.

The evidence above constitutes circumstantial lay evidence that a reasonable juror could rely on to find causation in this matter, connecting the alleged infestation in Mr. Prell's room at the Hotel to the infestation in his home in the following several weeks.  The Court does not attribute any particular weight to Mr. Prell's testimony.  Defendant will be free to test it at trial through rigorous cross examination.  It may have an opportunity to bring forth an expert to opine that Plaintiffs' claims are scientifically unsupportable, or otherwise to present evidence that contradicts Mr. Prell's sworn testimony.  Defendant has opted not to mount such a factual challenge at this stage, as is its prerogative.  As a result, before the Court is clear and unrebutted lay evidence that creates a fact issue for the jury.  Summary judgment will be denied as to Plaintiffs' claims for property damage.

Plaintiffs' claims for physical injury are a somewhat different matter.  All three Plaintiffs bring personal physical injury claims against Defendant, but medical evidence that

---

[103] Pls.' Resp. at ¶ 19.

might go to causation of the alleged injuries appears as to only one Plaintiff, Matthew Prell.[104]
The physical injuries claimed, which range from small bloody spots and itchy bumps on the skin
to persistent hives and welts all over the body, are not so plainly or closely connected to a
particular cause that they may be explained without medical testimony.  Accordingly, insofar as
Plaintiffs Mr. Prell and Mrs. Prell seek damages for personal physical injuries, as opposed to
damage to property, their claims will be dismissed.  Matthew Prell's claims for physical injury
will survive since they appear at this juncture to be properly supportable by medical evidence in
the form of treatment notes of the pediatricians and pediatric allergist who treated him in July
and August, 2005.[105]

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is
granted in part.  An appropriate Order follows.

---

[104] The precise content of the medical notes from Matthew Prell's treating physicians is not known to the Court, as neither party saw fit to include the notes in the summary judgment record.  It appears, however, that at least the medical records of Matthew Prell's pediatric allergist Dr. Smith refer to bedbugs in connection with Matthew's hives and welts.

[105] The Court notes that the absence of an expert report from any of Matthew Prell's treating doctors (none appears in the record presented) is not necessarily fatal to their ability to offer expert testimony as to the cause and nature of Matthew's injury.  Under Federal Rule of Civil Procedure 26, a treating physician may provide testimony as to the cause of a plaintiff's medical condition, as well as "the diagnosis, prognosis, and the extent of disability caused by the condition" without filing the written expert report required under Rule 26(a)(2)(B) if the treating physician "acquired his opinion . . . directly through treatment of the plaintiff."  See Lauria v. National Railroad Passenger Corp., No. 95-1561 1997, WL 138906, at *2 (E.D. Pa. March 24, 1997).  A physician who will offer such testimony must be identified to all opposing parties and made available for deposition.  It is clear from the record that the notice requirement of Rule 26 has been satisfied here.  Thus, Plaintiffs may rely on expert opinion testimony as to causation, diagnosis, prognosis and extent of injury from the various physicians who treated Matthew Prell so long as such opinions derive directly from their medical care of this plaintiff.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| | : | |
| **GARY PRELL, et al.,** | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **CIVIL NO. 07-CV-2189** |
| | : | |
| **COLUMBIA SUSSEX CORP.** | : | |
| d/b/a RADISSON LAKE BUENA VISTA, | : | |
| **Defendant.** | : | |
| | : | |

---

## ORDER

      **AND NOW**, this 20th day of October 2008, upon consideration of Defendant's Motion for Summary Judgment [Doc. No. 35], the Response in opposition [Doc. No. 36], and the Reply thereto [Doc. No. 38], it is hereby **ORDERED** as follows:

      1.  As to Count I (Gary Prell v. Defendant), the Motion is **granted in part**. Plaintiff Gary Prell's claims related to alleged physical injuries to his person are **dismissed**. Plaintiff Gary Prell's claims of property damage remain.

      2.  As to Count II (Lisa Prell v. Defendant), the Motion is **granted in part**. Plaintiff Lisa Prell's claims related to alleged physical injuries to her person are **dismissed**. Plaintiff Lisa Prell's claims of property damage remain.

      3.  As to Count III (Matthew Prell v. Defendant), the Motion is **denied**.

      It is **FURTHER ORDERED** that counsel shall review the terms of this Court's Order of August 13, 2008 [Doc. No. 39], with respect to Plaintiffs' deposition of Defendant's Rule 30(b)(6) corporate designee, any further discovery that may be desired, and the required

notification of settlement status, which is now both untimely and unexcused.

It is so **ORDERED**.

**BY THE COURT:**

/s/ Cynthia M. Rufe

_____

**CYNTHIA M. RUFE, J.**